UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | 5:18-cr-00264 |
| : | |
| JOSE ANTONIO ORTIZ : | |

**O P I N I O N**

**Defendant's Motion for Compassionate Release, ECF No. 35—DENIED**

**Joseph F. Leeson, Jr.**                                                                                                    **April 15, 2021**
**United States District Judge**

I.  **INTRODUCTION**

Defendant Jose Ortiz is serving a five-year prison term for possession with intent to distribute heroin and aiding and abetting. Ortiz now moves this Court for a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Ortiz's motion, which is opposed by the Government, is based on the alleged risk posed to him by the ongoing COVID-19 pandemic in light of what he identifies as "serious medical conditions." For the reasons set forth below, Ortiz's motion for compassionate release is denied.

II.  **BACKGROUND**

A.  **Ortiz's charges, conviction, and sentence**

On June 14, 2018, Ortiz was charged in an Information in the Eastern District of Pennsylvania with possession with intent to distribute heroin and aiding and abetting. *See* ECF No. 14. Ortiz pleaded guilty to the charge against him on July 12, 2018. *See* ECF Nos. 17-21. Ortiz was sentenced on September 25, 2019, at which time the Court determined that Ortiz's total offense level under the Sentencing Guidelines was 31, and his criminal history category was

VI, producing an advisory sentencing range of 188-235 months of imprisonment. *See* ECF No. 27. The Court imposed a sentence of 60 months' (5 years) imprisonment. *See* ECF No. 34. Ortiz is serving his sentence at FCI Schuylkill, with an anticipated release date of December 11, 2021. He has served approximately 43 months of his term and has credit for good conduct time of approximately 9 months, for total time served of approximately 52 months.

    B.   **Ortiz's motion for compassionate release**

Ortiz claims that he "is currently 43 years old," and "has been diagnosed with diabetes, hypertension, sleep apnea, high blood pressure, high cholesterol, anxiety[,] and obesity." Ortiz's Memorandum in Support of his Motion ("Ortiz Mem."), ECF No. 35, at 5. His motion relies primarily on the argument that these medical conditions, in light of the conditions of his imprisonment, constitute the requisite "extraordinary and compelling" reasons to justify a reduction in his sentence to time served.[1] *See id*. at 10. Ortiz also contends that upon consideration of the nature of the offense of which he was convicted and his personal history and characteristics, he does not pose a danger to the community. *See id*. at 11. On this point, Ortiz states that he was "convicted of non-violent offenses in this matter," and, additionally, he has "had no misconducts while incarcerated." *Id*. Ortiz additionally states that "[t]hankfully, [he] enjoys the support of his family and intends to reside with his wife and family" if released. *Id*. Finally, Ortiz states that a reduction in his sentence to time served is warranted upon consideration of the factors set forth in 18 U.S.C. § 3553(a), and such a reduction would be consistent with the applicable provisions of the United States Sentencing Guidelines ("U.S.S.G."). *See id*. at 11-12.

---

[1]  There is little substantive argument in Ortiz's memorandum as to what precisely about his medical conditions warrants a finding that the applicable standard has been met.

### C. The Government's opposition

The Government contends that "but for the existence of vaccines, Ortiz would have met th[e] standard for consideration for compassionate release, as his conditions of diabetes and obesity are certain CDC risk factors."[2] Government's Opposition to Ortiz's Motion ("Gov't. Opp'n."), ECF No. 42, at 12.  "However, such consideration is no longer warranted," because "[o]n February 10, 2021, the defendant was offered the first dose of the Pfizer COVID-19 vaccine, and he refused it. He has no known medical contraindication for the vaccine. His motion for compassionate release should be denied for this reason." *Id*. at 12.  According to the Government, Ortiz's refusal to accept the first dose of the COVID-19 vaccine necessarily precludes him from meeting the applicable standard (which is discussed in detail below):  an inmate may be eligible for compassionate release where "he is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *Id*.  The Government contends "[t]hat circumstance now no longer exists in this case. The defendant has been offered a vaccine approved by the FDA . . . [that] reduced the risk of infection by 95%, and is virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19." *Id*. at 13.  "Thus, the defendant, notwithstanding the risk factor he presents, has the ability to exercise 'self-care' against the virus, and no longer presents any extraordinary and compelling reason allowing compassionate release. He simply elected to decline the vaccine and not exercise self-care." *Id*.

---

[2]   The Government has filed Ortiz's medical records under seal as an exhibit in support of its opposition to his motion. *See* ECF No. 43.

The Government additionally argues that the Court should deny Ortiz's motion for compassionate release because (1) "the defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19," and (2) based on his offenses and criminal history, "he continues to present a danger to the community, and [he] should be required to serve the sentence that this Court imposed for his criminal conduct." *Id*. at 15.

### III.     LEGAL STANDARD

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).³ This section mandates that the defendant must first move for compassionate release with the Bureau of Prisons ("BOP"), which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risk COVID-19 poses in the federal prison system does not excuse the exhaustion requirement).

---

³     Section 3582(c) is actually part of the Sentencing Reform Act of 1984, but was amended by the First Step Act ("FSA") to provide prisoners a more direct route to court for relief. As one court in this District recently observed,

> [t]he concept of compassionate release is not a novel one. It was created with the Comprehensive Crime Control Act of 1984 . . . . Under the compassionate release provision as originally written in 1984, a motion for compassionate release could only be brought by [BOP]. In December of 2018 Congress enacted the FSA. And the FSA—for the purpose of increasing the use and transparency of compassionate release, as the relevant section is titled—amended the compassionate release provision to allow a motion brought directly by the defendant. Thus, while the BOP was the gatekeeper to compassionate release under the Comprehensive Crime Control Act of 1984, the FSA divested the BOP of this sole gatekeeper role.

*United States v. Andrews*, 480 F. Supp. 3d 669, 675 (E.D. Pa. 2020) (internal citations omitted).

Once a defendant satisfies the exhaustion requirement,[4] a court may reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Section 1B1.13 of the United States Sentencing Guidelines in turn provides the relevant "policy statements." Under U.S.S.G. § 1B1.13, a court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [ ] the reduction is consistent with this policy statement." The Sentencing Commission has advised that a defendant's physical or medical condition satisfies the "extraordinary and compelling" standard if, in relevant part:

(i) The defendant is suffering from a terminal illness . . . . [Or]

(ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

---

[4] The Court has already found that Ortiz satisfied his obligation to exhaust his administrative remedies, and as such does not address this point further.

      (II)  suffering from a serious functional or cognitive impairment, or

      (III)  experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.*, App. Note 1.

Importantly, as the terms of the statute indicate, compassionate release is an "extraordinary" form of relief. *See United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020). The burden is on the defendant to show that his circumstances present "extraordinary and compelling reasons" which justify compassionate release. *Id.* at 501.

## IV. DISCUSSION

Assuming that Ortiz's several medical conditions on their own would warrant consideration as circumstances that can be considered "extraordinary and compelling" in light of COVID-19—which, in the Court's view, is not a given[5]—for two reasons Ortiz is nonetheless unable to show an entitlement to compassionate release.

First, as the Government points out, Ortiz was offered a COVID-19 vaccine and declined it without any legitimate medical reason, something he does not appear to mention in his motion. *See, e.g.*, ECF No. 43 at 46. As opportunities to receive the vaccine have expanded in recent

---

[5]     It is not clear that Ortiz's blood pressure and weight are unmanaged or unmanageable, even in a correctional facility setting. For example, records from a medical evaluation performed on March 20, 2020, state that Ortiz "[h]as been losing weight, [h]as been doing the elliptical three times a week one hour," and that he "[s]tates [he] left the honey buns alone and [is] eating brown rice. No chest pains." ECF No. 43 at 31. Similarly, the Government points out that "at the time of sentencing, the defendant's presentence investigation report (PSR) stated the defendant represented that he had suffered from high blood pressure in the past but was able to control it through exercise and a low sodium diet. He reported that he had never been diagnosed with any serious illness, and he was 5 feet, 10 inches tall, and weighed 243 pounds." Gov't. Opp'n. at 2 (citing Ortiz's PSR ¶¶ 103-104).

months, several courts in this Circuit have had the opportunity to address motions for compassionate release filed by prisoners who, despite being offered one of the several COVID-19 vaccines, declined to be vaccinated. These cases, several of which are discussed below, support the conclusion that Ortiz's refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release.

In *United States v. Bautista*, No. CR 19-24-1, 2021 WL 1264596 (E.D. Pa. Apr. 6, 2021), a court very recently surveyed several similar cases from this Circuit. Upon consideration of those cases, the court concluded that the defendant's "refusal [to receive the Pfizer vaccine] undercuts the premises of his motion," a motion which "otherwise fails due to the lack of an extraordinary and compelling reason for release." *Id*. at *6.

In *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), another court went even further. The court in *Jackson* found that where a prisoner had refused to receive the Moderna vaccine when offered, she "ha[d] voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection." *Id*. at *2. Significantly, this was fatal to her motion for compassionate release, even though, unlike *Bautista*, she had "otherwise compelling medical reasons for release." *Id*.

In *United States v. Robinson*, No. CR 16-94, 2021 WL 719658 (W.D. Pa. Feb. 23, 2021), a court opined as follows about a movant for compassionate release's refusal to receive a COVID vaccine when offered one: "Whether that [refusal] was animated by [the defendant's] present request for release, vaccine-hesitancy, or both, the Court can only speculate. His refusal is notable, however, given the widescale desperation − of many in the general public − to acquire the same opportunity he has declined. . . . [I]t seems fair to conclude that his decision significantly undermines the foundational premises of his Motion." *Id.* at *1.

This Court agrees with the decisions reviewed above and others, that while a petitioner who declines a COVID vaccine is "within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." *United States v. Jackson*, No. 15-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021). To find otherwise would run counter to the Sentencing Commission's policy statements, which the statute requires this and other courts to consider. The following logic bears this out: if (i) a petitioner has a "serious physical or medical condition" that poses risks which might constitute extraordinary and compelling circumstances justifying release, but (ii) he also refuses an available and highly efficacious vaccine that almost entirely mitigates those risks, then (iii) he can no longer be said to suffer from a serious physical or medical condition "that *substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility*." U.S.S.G. § 1B1.13, App. Note 1 (emphasis added). The availability of the vaccine necessarily negates the diminishing effect his condition has on his ability to provide self-care. Put differently, following the availability of a vaccine, it is a prisoner's refusal to take advantage of the vaccine that risks diminishing his ability to provide self-care, not any underlying condition itself.[6]

There is a second reason Ortiz is unable to show that his circumstances present "exceptional and compelling" reasons justifying release. Ortiz's medical records indicate that on February 21, 2021, he tested positive for COVID-19. *See* ECF No. 43 at 45. His records also indicate that he while he initially experienced mild symptoms, they quickly subsided and he

---

[6] Additionally, common sense dictates that finding otherwise would risk creating perverse incentives. Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk.

experienced no long lasting or serious lingering effects of infection. *See id*. at 1, 4, 7, 9, 11, 13, 45. That Ortiz has been infected with the virus that causes COVID-19 and suffered only minimal symptoms (and, likely gained some level of immunity to future infections as a result), further militates against a finding that his several medical conditions put him at sufficient risk to warrant compassionate release.

A number of courts have concluded the same in addressing identical circumstances. *See, e.g., United States v. Ulmer*, No. CR 18-00579-3, 2021 WL 844579, at *2 (E.D. Pa. Mar. 5, 2021) ("Ulmer also argues the conditions at FPC Lewisburg place him at heightened risk of serious illness from COVID-19. Again, however, his medical records tell a different story about his vulnerability. Ulmer recently recovered from COVID-19, a fact apparently not worth mentioning in his Motion, and thankfully the severe complications he feared did not occur. Numerous courts have denied compassionate release at least partially because a movant already contracted the virus." (collecting cases)); *United States v. Moore*, No. CR 14-315-06, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) ("Where Moore has not faced any medical complications related to his COVID-19 infection or experienced an exacerbation of his underlying health issues, his medical condition does not qualify as 'an extraordinary and compelling reason' that would support his compassionate release." (collecting cases)).

In light of the Sentencing Commission's policy statements and recent case law, the fact that Ortiz declined to receive an available COVID-19 vaccine without reason and that he has already had COVID-19 necessarily precludes him from showing "extraordinary and compelling reasons" to justify his compassionate release. As a result, he has failed to satisfy the threshold inquiry relative to his motion. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Because his motion fails on this basis, the Court declines to proceed to address whether Ortiz would present a danger to the

community if released, whether release would be consistent with the Sentencing Commission's policy statement, or whether compassionate release would be consistent with the factors set forth in 18 U.S.C. § 3553(a). *See, e.g.*, *Jackson*, 2021 WL 1145903, at *2 n.2 ("Because Jackson fails to demonstrate an extraordinary and compelling justification for her release, there is no need to consider the factors under § 3553(a)."); *United States v. McNair*, 481 F. Supp. 3d 362, 370 n.8 (D.N.J. 2020) ("[I]f a court finds 'extraordinary and compelling' reasons justify a modification in a prisoner's sentence, the court must also decide whether to grant compassionate release by weighing the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. Because I find that 'extraordinary and compelling' reasons are not present here, I do not reach the second part of the analysis."); *see also United States v. Andrews*, 480 F. Supp. 3d 669, 688 (E.D. Pa. 2020).

## V. CONCLUSION

For the reasons set forth above, Ortiz's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
